**FIRST NATIONAL BANK OF STEELE-VILLE, NATIONAL ASSOCIATION,**
Plaintiff/Appellant,

v.

**ERB EQUIPMENT COMPANY, INC. Defendant/Respondent.**

No. 73068.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 24, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 4, 1998.

Application for Transfer Denied
Aug. 25, 1998.

Craig A. Smith, St. Louis, for plaintiff/appellant.

Paul M. Brown, Bruce D. Ryder, Paul J. Odum, St. Louis, for defendant/respondent.

CRANDALL, Judge.

Plaintiff, First National Bank of Steeleville, National Association (Bank), appeals from the trial court's grant of summary judgment in favor of defendant, Erb Equipment Company, Inc. (Erb), on Bank's action for replevin. We reverse and remand.

To be entitled to summary judgment, the movant must establish that there are no issues of material fact and that he is entitled to summary judgment as a matter of law. Rule 74.04. The propriety of summary judgment is purely an issue of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

The facts in the record establish that Bank was a secured creditor under a blanket security agreement with AmEarth Corporation (debtor), a mining operation, which gave Bank a security interest in all present and after-acquired excavating equipment. Erb also had a security interest in the equipment. Erb declared debtor in default and repossessed five pieces of equipment. The equipment was sold at foreclosure sales, and Erb purchased the five pieces of equipment. Bank brought an action against Erb: Count I of its first amended petition was for conversion of the equipment; Count II was for conversion of the proceeds from the foreclosure sales; Count III was for tortious interference with Bank's contract with the debtor; Count IV was for unjust enrichment as a result of retaining the proceeds of the sales; and Count V was for replevin of the equipment purchased by Erb at the sales. Bank moved for summary judgment in conversion, seeking damages in the amount of $437,-500.00. The trial court entered summary judgment in favor of Bank.

On appeal from that judgment, this court concluded that although Bank possessed a security interest in the equipment superior to

Erb's, Erb was entitled to repossess the equipment as a junior secured creditor, because Bank had failed to declare the debtor in default or to follow the procedures required by the loan agreement to enforce its rights upon the debtor's default.[1] *First Nat. Bank of Steeleville, N.A. v. Erb Equipment Co., Inc.*, 921 S.W.2d 57, 64, 32 U.C.C. Rep. Serv.2d 582 (Mo.App. E.D.1996) (hereinafter referred to as *Erb I* ). This court reasoned that Erb was not liable for conversion, because it had a right to possess the equipment as a junior secured creditor where the senior secured creditor refused to exercise its rights under the security agreement. *Id.* The judgment of the trial court in favor of Bank was reversed and the cause was remanded to the trial court. *Id.*

On remand, Bank moved for summary judgment under Rule 99.01 for replevin (Count V), alleging that Erb's continued refusal to turn over the equipment purchased at the foreclosure sales entitled it to replevin. The trial court entered judgment in favor of Erb on Bank's replevin count, stating that Bank "elected its remedy when it requested ... Summary Judgment for damages rather than a request for judgment of replevin." The trial court also entered judgment in favor of Erb on Counts I through IV of Bank's first amended petition.

In its first and second points on appeal, Bank contends the trial court erred in entering judgment for Erb on the replevin claim. It argues, respectively, that its theories of recovery for conversion and for replevin were not inconsistent and that the debt remained unsatisfied. Erb counters that "Bank's claims are inconsistent and subject to the election of remedies doctrine because it cannot recover, at the same instant, its alleged possessory right in the collateral and damages in lieu of its alleged possessory right in

1. The security agreement between Bank and AmEarth, as taken from the record on appeal in *Erb I*, provides as follows:

[I]n the event of non-payment, when due, of any account payable on this Note or any other indebtedness of the Undersigned to the Lender; ... or the insolvency, bankruptcy, liquidation, or cessation of business of any of the Undersigned; ... the Lender may exercise, from

time to time and without election of remedies, all rights and remedies available to it ... including the right to sell, lease or otherwise dispose of the Collateral at public or private sale.

At this point in time, under the terms of the agreement a default has occurred and Bank's actions in pursuing its legal remedies indicate its intent to declare the debtor in default.

the collateral." Because the first two points are related, we consider them together.

Replevin and conversion are similar in that both remedies require proof of the same elements; namely, (1) that the plaintiff is entitled to possession of the property; (2) that the defendant exercised unauthorized control over the property; and (3) that the defendant deprived the plaintiff of its right to possession. *Muir v. Ruder*, 945 S.W.2d 33, 35 (Mo.App.E.D.1997) (conversion); *First Tennessee Bank, N.A. v. Graphic Arts Centre, Inc.*, 859 S.W.2d 858, 863 (Mo.App. E.D. 1993) (replevin). Conversion is a tort against the right of possession. *Auto Alarm Supply Corp. v. Lou Fusz Motor Co.*, 918 S.W.2d 390, 392 (Mo.App. E.D.1996). Replevin is a possessory action to obtain from the defendant property that he possesses. *Id.* The plaintiff's right to possession of the property is essential to recovery under either a conversion or a replevin theory of recovery. In a replevin action, the plaintiff may elect to take the property or its value. Rule 99.12; *see also Jefferson v. Bick*, 840 S.W.2d 890, 891 (Mo.App. E.D.1992).

Erb relies on *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504 (Mo. banc 1993), to support its position that Bank's election of the remedy of conversion in its prior motion for summary judgment now bars it from pursuing the present replevin action. Election of remedies is a doctrine of estoppel based upon the theory that where a party has a right to pursue one of two inconsistent remedies and he makes his election and prosecutes it to final judgment, he cannot thereafter pursue another and inconsistent remedy. *Id.* at 506. "The purpose of the election of remedies doctrine is to prevent double recovery for a single injury." *Id.* As noted by the court in *Whittom* :

> Thus the plaintiff whose horse has been stolen can sue the thief for damages for conversion, or he can bring replevin ... to get the horse back. But he cannot do both, for this would give him both the value of the horse and the horse itself, a form of double recovery. The election of remedies doctrine prevents this by requiring the plaintiff to choose one of the two remedies. In this abstract form, it becomes merely a legal version of the idea that one can't have his cake and eat it too.

*Id.* at 506 (quoting Dan B. Dobbs, Remedies, Section 1.5 at 14 (1973)).

In the case before us, Bank's prior conversion claim considered in *Erb I* was premised on Bank's right to possess the equipment because Bank was the senior secured creditor at the time Erb repossessed the equipment from the debtor. In its decision in *Erb I*, this court acknowledged Bank's senior status; but found that Bank's conversion claim failed because Erb, as the junior secured creditor, had the right to possess the equipment at the time it foreclosed. *Erb*, 921 S.W.2d at 64 (citing *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302, 8 U.C.C. Rep. Serv.2d 260 (8 th Cir.1989)). In contrast, in the present claim for replevin, Bank alleged that "[Erb] purchased the equipment" in which Bank had a superior secured interest at the foreclosure sales. Thus, in the instant action, Bank was seeking possession of the equipment from Erb in Erb's capacity as the purchaser of the equipment, not in Erb's capacity as the junior secured creditor. Bank's right to possession in the prior conversion action and in the present replevin action was premised upon Erb's status at two distinct points in time; conversion was based upon Erb's status as the junior secured creditor when it foreclosed and took possession of the collateral; while replevin was based on Erb's status as the purchaser of the collateral at the foreclosure sales. This court's decision in *Erb I* considered Erb only in its capacity as a junior secured creditor, not in its capacity as a purchaser at the foreclosure sales.

In addition, Erb's reliance on *Whittom* is misplaced. That case involved an action by plaintiffs to establish their right to use a roadway. *Whittom*, 851 S.W.2d at 505. The plaintiffs based their right to use the roadway upon two alternative theories and the trial court required them to elect between the theories at the close of the evidence. *Id.* In contrast, Bank's replevin action was not an attempt to recover against Erb as the junior secured creditor merely on an alternative theory of recovery; but rather the replevin claim was a distinct action against Erb

based upon a different, independent right to the collateral in Erb's hands as the purchaser at the foreclosure sales. The conversion action considered in *Erb I* addressed Erb's act of repossessing the equipment, the replevin action in the instant case involved Erb's act of buying the equipment at the foreclosure sales. Under the particular facts of this case, replevin and conversion were not inconsistent remedies, such that Bank's election to proceed originally on the conversion claim operates as a bar to Bank's present replevin claim.

Bank had a right to proceed against Erb in replevin because Erb purchased the equipment at the foreclosure sales.[2]

> Upon the sale of the original collateral, the junior creditor's interest and any security interest or lien subordinate to his own are terminated along with the debtor's rights in the property. Any senior security interest survives, however. Consequently, its holder can follow the collateral into the hands of the buyer, who must yield possession of the collateral or, in some cases, pay damages if he is unwilling or unable to return the property.

Steve H. Nickles, *Rights and Remedies between U.C.C. Article 9 Secured Parties with Conflicting Security Interests in Goods*, 68 Iowa L.Rev. 217, 253–254 (1983) (footnotes omitted). Thus, Erb's sale and purchase of the collateral did not terminate Bank's interest in the equipment. As this court stated in *Erb I*, "The sales [to Erb] were necessarily made subject to Bank's interest in the collateral, which presumably Bank has and can enforce." *Erb*, 921 S.W.2d at 64. In *Frierson*, 868 F.2d at 304, a case relied on by this court in *Erb I*, the court permitted the judgment creditor to execute on certain funds because the senior secured creditor had failed to declare the debtor in default; but pointed out that the judgment creditor took.

the funds "subject to" the senior secured creditor's security interest in the funds, which the senior secured creditor could "trace and recapture" when it declared the debtor to be in default. In the present action, Erb, as the purchaser of the equipment at the foreclosure sales, took the equipment subject to the Bank's security interest. In view of its on-going security interest, Bank was entitled to enforce its interest[3] in the equipment by way of a replevin action against Erb as the purchaser of the equipment. Bank's action was not barred by the prior action against Erb in Erb's capacity as the junior secured creditor, because such a bar would be in derogation of Bank's continuing security interest in the equipment after the sales.

The trial court erred, as a matter of law, in entering summary judgment in favor of Erb on Bank's replevin count. Bank should have been permitted to proceed in its replevin action against Erb, despite its prior, unsuccessful attempt to bring an action against Erb for conversion. Bank's first two points are granted.

The only remaining issue on appeal is contained in Bank's fourth point. Bank asserts the trial court erred in denying its claim for pre-judgment interest on its replevin claim. Bank premised its claim for pre-judgment interest on a letter sent to Erb on September 5, 1989.

Pre-judgment interest is permitted under Section 408.040(2), RSMo (1994), which provides in pertinent part:

> In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest ... shall be calculated from a date sixty days after the

---

2. Section 400.9–504(3), RSMo (1994) permits the secured party to buy the collateral at a public sale and, under certain circumstances, at a private sale.

3. Sections 400–9.504(1) and (2), RSMo (1994) provides that "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral ... " and details how the proceeds of a sale must be applied: expenses of retaking

and selling the collateral are paid first; the security interest of the party who conducted the sale is then satisfied; next, if any proceeds remain, any subordinate security interest is satisfied if its holder has made a proper and timely demand; and lastly, any surplus is paid to the debtor. We note there is no provision with respect to satisfying any senior security interests.

demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier....

Given our disposition of this case, we decline to address this issue, because there is no judgment upon which to base an award of pre-judgment interest under the statute. Bank's final point is denied.

The judgment of the trial court is reversed and the cause is remanded.

AHRENS, P.J., and KAROHL, J., concur.